UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| **VALERIE PETERS**<br>2840 Tipperary Lane<br>Chesapeake Beach, MD 20732<br><br>**Plaintiff,**<br><br>v.<br><br>**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION No. 1200**<br>4426 Upper Beckleysville Road<br>Hampstead, MD 21074<br><br><u>Serve:</u><br>Kenneth Brown, Jr.<br>Officer and Business Manager<br>IBEW Local Union 1200<br>4426 Upper Beckleysville Rd.<br>Hampstead, MD 21074<br><br>**Defendant**. | Case No.:<br><br><u>**JURY TRIAL DEMAND**</u> |

## **COMPLAINT**

Valerie Peters ("Ms. Peters" or "Plaintiff"), by and through their counsel of record, Thatcher Law Firm, LLC, hereby files this Complaint against Defendant International Brotherhood of Electrical Workers Local Union No. 1200 ("Local IBEW" or "Defendant") and states as follows:

## **INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), that she is entitled to recover from Defendant: (1) unpaid wages, (2) unpaid overtime wages, (3) liquidated damages, and (4) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* ("MWHL"), and Maryland Wage Payment and Collection Law, Md. Code Ann., Lab & Empl. § 3-501 *et seq.* ("MWPCL"), she is entitled to recover from Defendant: (1) unpaid wages, (2) unpaid overtime wages, (3) treble damages, and (4) attorneys' fees and costs.

3. Plaintiff further alleges that Defendant breached its employment contract with Plaintiff, and is entitled to recover from Defendant: actual damages, both (1) compensatory and (2) consequential.

## PARTIES AND JURISDICTION

4. Plaintiff Valerie Peters ("Ms. Peters" or "Plaintiff") is an individual resident of the State of Maryland and resides in Calvert County.

5. Defendant International Brotherhood of Electrical Workers Local Union No. 1200 ("Local IBEW" or "Defendant") is an unincorporated labor organization doing business as I.B.E.W. Local Union No. 1200. Local IBEW at all relevant times maintained its principle place of business in Calvert County and Prince George's County, Maryland. Local IBEW's principle place of business is now in Carroll County, Maryland.

6. Local IBEW is affiliated with the international labor organization International Brotherhood of Electrical Workers, AFL-CIO, LCL, which operates all over the United States.

7. Upon information and belief, at all times during the period of Plaintiff's employment, Local IBEW maintained what few employment records exist relating to Plaintiff or caused such records to be maintained.

8. At all times during Plaintiff's employment, Local IBEW engaged in interstate commerce within the meaning of the FLSA. Local IBEW regularly represented

and communicated with Union members traveling outside of Washington, D.C. to staff TV broadcasting and sporting events.

9. On information and belief, since 2011 Defendant's gross revenue exceeded $500,000.00, and thus Defendant qualified as an "enterprise" within the meaning of the FLSA.

10. At all times during Plaintiff's employment, Plaintiff was an individual employee of Local IBEW, who while engaged in her employment duties, communicated with Union Members in other states, via email, phone, and mail correspondence, engaging in interstate commerce as required by 29 U.S.C. §§ 206-207.

11. At all relevant times, Defendant was Plaintiff's "employer" for purposes of the FLSA, MWHL, and MWPCL.

12. This Court has jurisdiction over Defendant pursuant to 29 U.S.C. §216(b) (FLSA), 28 U.S.C. § 1331 (federal-question jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

13. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## **FACTS**

14. Local IBEW represents broadcasting and freelance members working for TV Stations, Productions Houses, and Sporting Events in the Washington, D.C. area. IBEW also represents freelance members in the following states: Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, and West Virginia

15. Local IBEW represents more than 500 Union Members.

16. Plaintiff was employed by Local IBEW as an Office Assistant from 1994 through January 2015.

17. In January 2015, Plaintiff was promoted from Office Assistant to Production Coordinator.

18. When Plaintiff first began employment at Local IBEW, she was offered and accepted a contract, a Full-time Clerical Secretarial and/or Administrative Agreement with Local IBEW, which included terms for, *inter alia*, a group Hospitalization/ Medical plan for all employees with premiums paid by Local IBEW, vacation and holiday pay, sick leave, termination only for "just cause", and payment for earned but not taken vacation upon termination.

19. On May 15, 2005, Local IBEW offered updated employment contracts to their employees, and Plaintiff signed a Full-time Clerical Secretarial and/or Administrative Agreement ("Employment Agreement") with Local IBEW.

20. The May 15, 2005 Employment Agreement was the same as Plaintiff's first contract, except terms were added for an employee pension benefit, amended vacation pay, and updated severance terms.

21. The Employment Agreement said that Plaintiff's employment could only be terminated for "just cause."

22. The Employment Agreement provided Plaintiff Group Hospitalization/Medical plan coverage and stated that premiums shall be paid by Local IBEW as long as budget permits.

23. During Plaintiff's employment, Defendant failed to provide Plaintiff a Hospitalization/Medical plan until February 2016.

24. Upon information and belief, Defendant provided a paid Hospitalization/Medical plan for all employees at Local IBEW except Plaintiff.

25. Upon information and belief, Defendant paid for all medical premiums for all employees at Local IBEW except Plaintiff.

26. Local IBEW knew it was contractually obligated to provide Plaintiff a Hospitalization/Medical plan.

27. In September 2015, the Board met and finally approved a Hospitalization/Medical plan for Plaintiff and her husband.

28. In October 2015, Plaintiff asked Tom Albano (Plaintiff's supervisor and Business Manager of Local IBEW), for the status of the medical plan. Mr. Albano said "they lost the paperwork."

29. Dirk Gilliam (President) and Thomas Flood (Treasurer) intervened in late January 2016 to get Plaintiff the Hospitalization/Medical plan. Starting February 2016, Plaintiff received a Hospitalization/Medical plan through Local IBEW after 21 years without medical coverage.

30. Since 1998, Defendant has paid out approximately $164,472.00 in Hospitalization/Medical plan premiums for the other employees.

31. Plaintiff was terminated only four (4) months after finally getting a Hospitalization/Medical plan.

**Violation of Federal and Maryland Wage and Hour Laws:**

32. Plaintiff was always an hourly employee at Local IBEW.

33. Plaintiff originally made $10.50 an hour. Starting in July 1996, Plaintiff received a raise to $11.20 an hour.

34. From 1996 through 2015, Plaintiff received periodic increases to her hourly rate.

35. By May 2014, Plaintiff's hourly rate had increased to $21.15 an hour. At that time, Tom Albano, Local IBEW Officers, and the Board of Directors of Local IBEW approved another raise for Plaintiff.

36. In January 2015, Plaintiff was officially promoted to Production Coordinator, and her hourly rate increased to $25.45. The raise was made retroactive to July 2014 to make good on the promise of a raise in May 2014.

37. Throughout her employment, Plaintiff worked from Monday through Friday at least 8 hours a day for a total of 40 hours.

38. However, Plaintiff was also required and expected to work approximately 30 weekends a year to assist Local IBEW Members with TV sporting events staffed by Local IBEW Members. Plaintiff worked eight (8) hour days those weekends on Saturday and Sunday.

39. During these weekend TV sporting events, Plaintiff was expected to troubleshoot any issues that would occur between the Local IBEW crews, including but not limited to staffing issues, such as no shows, filling all the crew roles for events, problems with the TV Networks, and any other miscellaneous issues on the site.

40. Plaintiff was responsible for completing all the "crew sheets" for TV sporting events, such as CBS and Fox Sports NFL Games, College Football Games, NASCAR, and PGA Golf events. The events took place in Washington, D.C., Baltimore, Atlanta, Tampa Bay, and Jacksonville.

41. Plaintiff received the crew sheets for weekend TV sporting events from the IBEW International Broadcasting Department.

42. Crew sheets required Plaintiff to call Union Members to fill the different roles for the TV Broadcasting crews, such as cart driver, audio assistants and utility roles. Plaintiff chose the appropriate Member for each role on the TV Broadcast crews.

43. The Members expected Plaintiff to be responsive to their concerns during all weekend TV sporting events.

44. Every year, Plaintiff was required to work overtime approximately 2 weekends for Fox Sports Major League Baseball Playoffs Series, including the National League Divisional Series, National League Championship Series, and the World Series.

45. Every year, Plaintiff was required to work overtime approximately 2 weekends for the CBS Sports AT&T National Golf Tournament and Quicken Loans Golf Tournament.

46. Every year, Plaintiff was required to work overtime approximately 2 weekends for Fox Sports NASCAR events, Speedweek and the Daytona 500.

47. Every year, Plaintiff was required to work overtime approximately 12 weekends for CBS Sports College Football and National Football League games.

48. Every year, Plaintiff was required to work overtime approximately 12 weekends for Fox Sports College Football and National Football League games.

49. During these weekend, TV sporting events, Plaintiff was required to work and be on-call for approximately 8 hours a day on both Saturday and Sunday.

50. At all times, relevant to the Complaint, Local IBEW was aware that Plaintiff worked during the weekend TV sporting events.

51. At all times, relevant to the Complaint, Local IBEW knew that Plaintiff was required to work overtime hours approximately 30 weekends a year.

52. Despite knowing that Plaintiff was required to work overtime hours, Local IBEW willfully failed to pay Plaintiff all her overtime hours that she worked.

53. Local IBEW only paid Plaintiff overtime on two occasions; once in 2014 and the other time in 2016.

54. From 2013-2016, Local IBEW owes Plaintiff overtime and regular wages in the amount of approximately $51,876.00:

**7/6/2013-7/6/2014**: $31.725 * 16 hours per week * 30 weeks= $15,228.00

**7/6/2014-7/6/2015**: $38.175 * 16 hours per week * 30 weeks= $18,324.00

**7/6/2015-7/6/2016**: $38.175 * 16 hours per week * 30 weeks= $18,324.00

**Constructive Discharge:**

55. In December of 2010, Local IBEW began renting out its offices, and told employees to work from home. Local IBEW had Plaintiff use her home as an office and storage facility, by moving the Local IBEW documents, supplies and equipment to Plaintiff's home in Chesapeake Beach, MD, where they remained until the time of her constructive discharge.

56. On or about July 2015, Kim Pullen, the Office Manager in charge of member billing and dues processing, was terminated after twenty-five (25) years of employment.

57. Mr. Albano passed all of Ms. Pullen's duties and responsibilities onto Plaintiff with no additional compensation.

58. From July 2015 through July 2016, Plaintiff was expected to perform an unmanageable workload. In July of 2015, Plaintiff told Mr. Albano that she needed assistance with her expanded work duties.

8

59. On or about August 2015, Plaintiff asked Mr. Albano about hiring a part-time employee to assist her with her multiple jobs. However, instead of hiring a part-time employee, he hired a new CPA, who was not tasked with assisting Plaintiff.

60. Plaintiff's work load increased even more in September 2015, when she had the full-time responsibility of supplying crews for the National Football League games for CBS and Fox Sports in Atlanta, Baltimore, Jacksonville, Tampa Bay, and Washington.

61. In October 2015, Mr. Albano cut off regular communication with Plaintiff, and only communicated sporadically.

62. On July 6, 2016 at 8pm, Mr. Kenneth Brown was to be sworn in officially as the new Business Manager of Local IBEW. On the same day, around 11:00 am, four men showed up unannounced at Plaintiff's home. They were Mr. Brown, Mr. Albano, his son, and a friend of Mr. Albano's son. Upon arrival, Plaintiff's husband answered the door, and Mr. Brown said, "My name is Ken Brown from the Union and I am here to get my stuff." Plaintiff was provided no notice, not even a telephone call prior to the sudden arrival of the new business manager and his crew. They demanded entrance into her home. Plaintiff's husband stated, "My wife is unavailable at the moment and will be right with you." Plaintiff came to the door and saw a U-haul coming down her driveway. Her husband told Mr. Brown that he did not have permission to drive the U-Haul onto their property and asked him to drive the U-haul off the property. Plaintiff repeatedly asked Mr. Albano what was happening. Mr. Brown came back down the driveway and said that he was there to get "his stuff," and that IBEW is relocating their office.

63. Plaintiff was shocked and began hyperventilating. She had never met or spoken with Mr. Brown before that day.

64. Prior to July 6, 2016, no discussion of a meeting at Plaintiff's home ever took place.

65. Plaintiff then told Mr. Brown that this is no way to introduce oneself, and that they should have given her a warning. Mr. Brown replied "I have a lot to do today and do not have time for this."

66. Without any notice or warning, the same day, the Local IBEW crew forcefully took all of the Plaintiff's office materials and supplies from her home and relocated the office to a remote location approximately eighty (80) miles away.

67. Local IBEW forced Plaintiff to resign from Local IBEW by showing up at her home unannounced, taking all of her office materials and supplies, and not telling her that the office was moving to a remote location.

68. As of July 7, 2016, Local IBEW's new location was in Hampstead, Maryland, over 80 miles away from Plaintiff's home in Chesapeake Beach, Maryland, and at least a two-hour commute both ways.

69. IBEW knew that Plaintiff could not work in the remote new office, and by design gave her no notice of the planned move.

70. Plaintiff was constructively discharged by Local IBEW on July 6, 2016.

71. Local IBEW breached Plaintiff's Employment Contract by terminating her without just cause and by failing to pay Plaintiff her earned vacation balance and pension contributions.

72. Upon information and belief, Plaintiff was owed $9,569.20 in unused vacation and $2,646.80 in pension contributions.

# COUNT I

## Violation of Federal Fair Labor Standards Act
## (Overtime)

73. Paragraphs 1 through 72 above are hereby adopted and incorporated herein by reference.

74. The FLSA mandates that an employer must pay employees overtime wages in the amount of one-and-one-half (1 1/2) times the employee's regular rate of pay for all overtime hours worked each week in excess of forty (40).

75. At all times, Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. §§ 206(a) and 207(a), and Defendant was Plaintiff's "employer" under FLSA, 29 U.S.C. 207(a)(2).

76. Defendant, as Plaintiff's employer, was obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1 ½) times Plaintiff's regular rate of pay for all hours worked per week in excess of forty (40).

77. As set forth above, while in Defendant's employ, Plaintiff worked many overtime hours each week in excess of forty (40).

78. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff at the statutory rate of time-and-one-half for all hours worked in excess of forty (40) per week when Defendant knew or should have known such was due.

79. As set forth above, Defendant failed and refused to compensate Plaintiff properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40).

WHEREFORE, Defendant is liable to Plaintiff under Count I for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this act, and any other and further relief this Court deems appropriate.

## COUNT II

## Violation of Maryland Wage and Hour Law

80. Paragraphs 1 through 79 above are hereby adopted and incorporated herein by reference.

81. At all relevant times, Plaintiff was employed by Defendant within the meaning of the Maryland Wage and Hour Law ("MWHL").

82. Plaintiff is entitled to be paid for all hours worked under the MWHL, including without limitation overtime compensation.

83. At all relevant times, Defendant had a policy and practice of refusing to compensate Plaintiff for all hours worked in excess of forty (40) per week.

84. At all relevant times, Defendant had a policy and practice of refusing to compensate Plaintiff at the statutory rate of time-and-one-half for all hours worked in excess of forty (40) per week.

85. At all relevant times, Plaintiff worked more than forty (40) hours per week, and regularly worked approximately fifty-six (56) hours per week.

86. Defendant knew of and/or showed a willful disregard for the provisions of the MWHL as evidenced by its failure to compensate Plaintiff for all hours worked and at the statutory rate of time-and-one-half for all hours worked in excess of forty (40) per week when Defendant knew or should have known such was due.

87. Defendant violated Maryland's Wage and Hour law, § 3-401 *et. seq.* of the Labor and Employment Article, requiring the payment of all overtime wages.

88. The hours that Defendant refused to pay were overtime hours compensable at the rate of one-and-one-half times Plaintiffs' respective regular hourly rates of pay, in accordance with §3-415 of the Labor and Employment Article.

89. Unpaid regular and overtime wages are therefore due and owing to Plaintiff by Defendant.

90. Defendant's failure and refusal to comply with its obligations under Maryland's Wage and Hour law was not due to any bona fide dispute and was therefore willful and not in good faith.

91. As a direct and proximate result of Defendant's willful disregard of the MWHL, Plaintiff is entitled to recovery against Defendant, including without limitation unpaid wages, treble damages, and reasonable attorneys' fees and costs, all in an amount to be determined at trial.

## COUNT III

## Violation of Maryland Wage Payment and Collection Law

92. Paragraphs 1 through 91 above are hereby adopted and incorporated herein by reference.

93. Plaintiff's regular and overtime compensation wrongfully withheld by Defendant constitutes a "wage" as that term is defined within Maryland's Wage Payment and Collection Law, § 3-501, *et. seq.* of the Labor and Employment Article.

94. Defendant's actions in willfully failing to pay Plaintiff's earned regular and overtime compensation constitutes a violation of Maryland's Wage Payment and Collection Law, § 3-501, *et. seq.* of the Labor and Employment Article.

95. Defendant's failure to pay wages due to Plaintiff was not the result of a bona fide dispute.

96. More than two (2) weeks have elapsed from the date on which the compensation described above should have been paid to Plaintiffs.

97. Plaintiff is entitled to recover against Defendant including, without limitation, unpaid wages, treble damages, and reasonable attorneys' fees and costs, all in an amount to be determined at trial.

## COUNT IV

## Breach of Contract

98. Paragraphs 1 through 97 above are hereby adopted and incorporated herein by reference.

99. In 1994, when Plaintiff first began employment with Local IBEW, Local IBEW offered Plaintiff an employment agreement.

100. In 1994, Plaintiff accepted the employment agreement and all terms contained therein, including that Plaintiff can only be terminated for "just cause", Plaintiff shall receive a Group Hospitalization/Medical plan with premiums being paid by Local IBEW, and that Plaintiff will receive all unused vacation upon termination.

101. In May 15, 2005, Local IBEW offered an updated Employment Agreement with substantially the same terms, including termination only upon just cause.

102. In May 15, 2005, Plaintiff accepted the updated Employment Agreement.

103. By failing to provide Plaintiff a Group Hospitalization/Medical plan, Local IBEW breached the terms of the Employment Agreement.

104. By failing to pay for Plaintiff's medical premiums, Local IBEW breached the terms of the Employment Agreement.

105. Local IBEW breached the Employment Agreement with Plaintiff when it constructively discharged her without just cause.

106. Local IBEW deliberately made Plaintiff's working conditions intolerable in order to force her to quit.

107. By cutting off regular communication with Plaintiff, abruptly and without notice moving the Local IBEW offices approximately 80 miles away from Plaintiff's home, in addition to surfacing unannounced at Plaintiff's home in an effort to remove all work supplies and documents from Plaintiff, Local IBEW intended for its actions to force Plaintiff to quit.

108. Local IBEW also breached the Employment Agreement by failing to pay Plaintiff for all vacation time earned but not taken upon termination, and for failing to credit all pension contributions.

Due to Defendant's breach, Plaintiff is entitled to recover against Defendant both compensatory and consequential, back pay, front pay, emotional damages, in an amount to be determined by the jury, and any other damages to which Plaintiff is lawfully entitled.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues in this Complaint and in all issues which may hereafter arise in this action which are triable of right by a jury.

## REQUEST FOR RELIEF

In consideration of the foregoing, Plaintiff hereby requests that, upon trial by jury, the Court enter a judgment in favor of Plaintiff and against Defendant, providing for the following relief:

a. An award of actual damages, both compensatory and consequential, in an amount to be determined by the jury;

b. Liquidated damages pursuant to the claims asserted under the FLSA;

c. Treble damages pursuant to the claims asserted under the MWHL and MWPCL;

d. Back pay and front pay for Plaintiff, or such other equitable or legal relief as the Court may deem appropriate;

e. Reasonable attorneys' fees and costs, including without limitation attorneys' fees and costs pursuant to each claim asserted under the FLSA, MWHL, and MWPCL;

f. Prejudgment and post-judgment interest at the highest rate(s) allowed by law; and

g. Such further relief which this Court may deem appropriate and to which Plaintiffs are entitled.

Respectfully submitted,

_____/s/_____
Linda Hitt Thatcher #05039
Wayne B. Wiseman #17462
Lindsay A. Freedman #12601

THATCHER LAW FIRM, LLC
Belle Point Office Park
7849 Belle Point Drive
Greenbelt, MD 20770

Telephone: (301) 441-1400
Facsimile: (301) 441-9602

*Counsel for Plaintiff Valerie Peters*